UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LYCÉE FRANÇAIS INTERNATIONAL DE LA LOUISIANE | * * * | CIVIL ACTION NO. 26-00946 |
| VERSUS | * * * | JUDGE: JANE TRICHE MILAZZO |
| AGENCE POUR L'ENSEIGNEMENT FRANÇAIS A L'ETRANGER, A/K/A AGENCY FOR FRENCH EDUCATION ABROAD | * * * * | MAG. JUDGE: JANIS VAN MEERVELD |

**AGENCE POUR L'ENSEIGNEMENT FRANÇAIS À L'ÉTRANGER'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant, Agence Pour L'enseignement Français à L'étranger, a/k/a Agency for French Education Abroad, ("the AEFE") respectfully submits this memorandum in support of its Motion to Dismiss.

**INTRODUCTION**

Having lost three times in the courts of France, Lycée Français filed this lawsuit, asking a Louisiana state court to decide when and how the French Government accredits foreign schools. As detailed herein, the courts of the United States do not have jurisdiction to decide this issue because the AEFE is immune under the Foreign Sovereign Immunity Act ("FSIA"). Furthermore, even if the AEFE was not immune, this case should proceed in France, where Lycée Français first filed suit, French courts already denied the preliminary injunctive relief sought in this case, and the parties are actively litigating the permanent injunctive relief sought here. The Court should grant the AEFE's motion and dismiss this case.

**BACKGROUND**

**I.      The AEFE**

The AEFE is a national public administrative agency placed under the supervision of the French Minister for Europe and Foreign Affairs.  French Code of Education, Article L452-1.  It is closely monitored by the French Ministry of Education as well.  Article L452-2 of the French Education Code defines the AEFE's ten-part national purpose:

1.  To ensure, for the benefit of French children residing outside France, the public service missions relating to education;
2.  To contribute to strengthening cooperative relations between the French and foreign education systems, for the benefit of French and foreign pupils;
3.  To contribute, in particular through the enrolment of foreign pupils, to the influence of the French language and culture;
4.  To assist the families of French or foreign pupils in meeting the costs associated with schooling in nursery and primary classes, at lower and upper secondary level, and in higher education, while ensuring the stabilization of tuition fees;
5.  To award scholarships to children of French nationality enrolled in French schools and educational establishments abroad, the list of which shall be determined by joint order of the minister responsible for education, the minister responsible for foreign affairs, and the minister responsible for cooperation;
6.  To ensure compliance with the principles of inclusive schooling with respect to pupils with special educational needs;
7.  To contribute, as a priority, to the training of staff working, or intending to work, in French educational establishments abroad, and of staff working in foreign education systems within the scope of the educational cooperation mission referred to in item 2, through training programs delivered—save for a duly reasoned exception—in the French language or relating to the French language;
8.  To advise promoters of initiatives aimed at creating a French educational establishment in connection with the conduct of their accreditation (homologation) project;
9.  To examine applications for a State guarantee to finance the acquisition, construction and fitting-out of educational premises;
10. To serve as a laboratory for pedagogical innovation for national education, in particular in the field of language teaching.

The Conseil d'État issues decrees that establish the manner in which the provisions of the French Education Code are applied to French schools abroad.  Article L451-1.

**II.      The French Government accredits schools outside of France.**

Schools located outside of France can voluntarily apply to become accredited by the French Government so that graduates who complete the accredited curriculum can receive the prestigious French Baccalauréat.  Accreditation is governed by Articles L. 451-1 *et seq*. and R. 451-1 *et seq*. of the French Education Code.  Relevant here, Article R. 451-2-2 of the French Education Code provides, "Accredited French educational institutions abroad may, at any time, be subject to an inspection by the services of the Minister responsible for Education, the Minister for Foreign Affairs, and the Agency for French Education Abroad (the AEFE)."  Article R. 451-2-12 provides, "In the event of a breach of the obligations arising from accreditation, the institution may be placed on a probationary year or have its accreditation withdrawn by decision of the Minister responsible for Education and the Minister for Foreign Affairs."  When a school is placed on probation, "the institution shall take the necessary measures to remedy the identified breaches within a period not exceeding six months." *Id.*  After the six-month probation period, "accreditation may be maintained or withdrawn, or the probationary year renewed." *Id*.

The AEFE itself does not accredit foreign schools.  Instead, the agency, which employs approximately 5,000 civil servants, acts as the service provider to support foreign schools and help them maintain their accreditation.  The AEFE serves over 500 schools worldwide, in about 140 countries.  It has litigation with only one school: Lycée Français.

**III.     Lycée Français signs a Collaboration Agreement with the AEFE.**

Lycée Français is a charter school in New Orleans.  On September 17, 2014, Lycée Français signed a Collaboration Agreement with the AEFE, which was required to ensure the school's accreditation by the French Government.  Collaboration Agreement, attached as Exhibit

A.[2]  By signing the agreement, Lycée Français agreed to, among other things, "[r]espect the rules and accreditation criteria of the French Ministry of National Education, solely qualified to deliver accreditation" and "[h]ost and facilitate visits organized by the AEFE."  *Id*.  The Collaboration Agreement explicitly references the relevant Articles of the French Education Code. *Id*.

**IV.    Issues with Lycée Français raise serious concerns.**

On June 4, 2025, the French Ministry of Foreign Affairs and the Ministry of Education placed Lycée Français on probationary status,[3] including for the following major reasons:

- Lack of pedagogical rigor, including insufficient exposure to the French language and a non-functional Centre de Documentation et d'Information (French library).
- Vacant jobs such as the guidance counselor position, excessive workloads for staff that were detrimental to ensuring high quality education, and insufficient professional development for teachers.
- Limited involvement of parents and teachers in school governance.
- Lack of student engagement, evidenced by the absence of student councils and representatives.
- Unexplained and significant decline in enrollment (173 students) and the closure of nine classes in one year at the elementary and middle-school levels.

Along with the probation determination, the French Ministry of Foreign Affairs and the Ministry of Education provided Lycée Français with recommendations to come into compliance within the six-month grace period, including:

- Implement a more even balance between French and Louisiana curricula, including strengthening French language use and revitalizing the Centre de Documentation et d'Information (French library).
- Reassess staff observation, evaluation, remuneration links, and professional development structures.
- Create student representative bodies and support student-led projects.
- Clarify leadership responsibilities and develop a collective school development plan.

---

[2]    Lycée Français refers to this document as a "partnership agreement."  Petition (R. Doc. 1-1) at ¶ 11.

[3]    The AEFE does not make decisions about probation.

4

- Improve facilities, equipment, and attention to the needs of younger pupils and strengthen guidance services, including Parcoursup.

Just one month after the probation decision, on July 2, 2025, the Conseil d'État issued Decree No. 2025-611, which implemented procedures for foreign schools placed on probation. Given the July 2, 2025 decree, the French Government withdrew its June 4, 2025 decision to account for the newly codified procedures.  Nonetheless, the factual bases for the probation decision were still valid, and Lycée Français knew that the issues raised still needed to be addressed, or the school would be placed on probation under the procedures outlined in the July 2, 2025 decree.

Despite having knowledge of the French Government's issues with the school, Lycée Français failed to take the necessary curative action.  On December 5, 2025, the French Government issued the new probation decision, this time pursuant to the new July 2, 2025 decree.  The December 5, 2025 decision noted, in addition to the issues raised in the June 4, 2025 probation determination, further major concerns. The December 5, 2025 decision also listed recommendations so that Lycée Français could take corrective action to preserve its accreditation.

The French Government gave Lycée Français until February 16, 2026 to submit a remedial compliance plan, which required the production of certain documents.[4]  The deadline was always available online on the dedicated platform and further reiterated as a courtesy to Lycée Français in a reminder email sent on February 5, 2026.  Lycée Français did not meet the

---

[4]    The AEFE rejects Lycée Français' characterization of the document requests as onerous. The  requested documents should be kept in the school's ordinary course of business.  To this point, although the school is required to produce certain financial documents, there is no "financial audit" required, as incorrectly stated by Lycée Français in its Petition.

5

February 16, 2026 deadline.  On March 10, 2026, the French Government granted a courtesy extension through April 9, 2026.

Given the ongoing issues with Lycée Français, on April 8, 2026, the French Government requested an on-site visit pursuant to Article R. 451-2-2 of the French Education Code ("Accredited French educational institutions abroad may, at any time, be subject to an inspection by the services of the Minister responsible for Education, the Minister for Foreign Affairs, and the Agency for French Education Abroad (the AEFE).").  The French Government offered to visit the school on either April 15-16, 2026 or April 27-28, 2026.  Lycée Français ignored the French Government's request for an inspection.

Lycée Français (again) missed the (already extended) deadline of April 9, 2026 to submit all of the requested compliance documents.[5]  The French Government granted a *second* courtesy extension, through April 21, 2026, for the school to submit all of the required documentation.

Rather than comply, on April 21, 2026, Lycée Français ran to state court, which does not have jurisdiction over the AEFE or the French Government, to obtain a Temporary Restraining Order.[6]  The AEFE was not provided advance notice of the filing of the TRO or an opportunity to present its case to the state court before the TRO was signed.

## V.      Lycée Français loses three times in French courts.

Lycée Français fails to mention in its Petition that, prior to filing this lawsuit in state court, Lycée Français filed (and lost) three legal actions in France related to the accreditation process or accreditation decisions.

---

[5]      Lycée Français produced certain, incomplete documents on April 9, 2026.

[6]      In its Petition, Lycée Français egregiously distorts the facts.  Lycée Français repeatedly states that the AEFE provided the school "only eight days to comply" with the document production.  The April 21, 2026 deadline had already been extended twice.

First, Lycée Français sought injunctive relief in the form of a référé-suspension (summary suspension) to suspend the December 5, 2025 probation decision.  On January 20, 2026, the Tribunal Administratif de Paris (Paris Administrative Court) denied Lycée Français' motion, finding no immediate or urgent harm that justified a suspension of the probation decision.  A copy of this decision, as translated, is attached hereto as Exhibit C.[7]

Second, following its failure to meet the February 16, 2026 compliance deadline for production of documents, Lycée Français *again* sought injunctive relief to suspend the December 5, 2025 probation decision, arguing that there was now a risk of immediate or urgent harm.  The Tribunal Administratif de Paris, following a hearing, again denied the relief.  The Tribunal noted that there was no "serious doubt" about the legality of the probation decision.  A copy of this decision, as translated, is attached hereto as Exhibit D.

Third, Lycée Français sought injunctive relief to stay or extend the March 10, 2026 order requiring the school to submit compliance documents on April 9, 2026.  On April 9, 2026, after yet another hearing, the Tribunal Administratif de Paris denied the relief, finding no basis to stay or extend (the already-twice-extended) deadline.  A copy of this decision, as translated, is attached hereto as Exhibit E.

**VI.    There is ongoing litigation in France instituted by Lycée Français concerning the same issues presented in Lycée Français' lawsuit.**

Although the Tribunal Administratif de Paris denied the preliminary injunctive relief sought by Lycée Français on three separate occasions, Lycée Français' request for permanent injunctive relief is being actively litigated in the French courts in two cases.

---

[7]   Both the original decisions in French and a copy translated by Microsoft Copilot (and checked for accuracy by a French-speaking attorney) are provided.  The AEFE is working to obtain certified translations and can provide them to the Court.

Case No. 2600096 is a lawsuit for "exces de pouvoir" (arbitrary decision) regarding the December 5, 2025 probation decision. In this case, Lycée Français claims that the French Government did not follow proper procedure in placing Lycée Français on probation and that the probation decision was "arbitrary and capricious." Lycée Français is requesting that the French court vacate the December 5, 2025 probation decision.

Case No. 2609960 is a lawsuit for "exces de pouvoir" (arbitrary decision) regarding the deadlines and procedure for Lycée Français to provide documents necessary for the school to come into compliance. Lycée Français is requesting the French court provide the school with additional time to come into compliance with the French Government's requirements.

Despite the ongoing litigation and having already lost three times in French courts, Lycée Français filed suit in Civil District Court asking the state court to tell the French Government how to accredit schools. As Lycée Français knows given its efforts to first litigate this matter in France, Lycée Français cannot assert these claims in the United States because the AEFE is immune from suit and, in any event, France is the proper forum.

## ARGUMENT

I.      **Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A.  **Rule 12(b)(1) Legal Standard**

The party asserting subject matter jurisdiction – here, Lycée Français – bears the burden of proof on a Rule 12(b)(1) Motion to Dismiss. *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011) (citing *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Bloomfield v. Kingdom of Saudi Arabia*, No. 19-04213, 2021 WL 3640716, at *1 (S.D. Tex. June 1, 2021) (quoting

8

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "A district court may dispose of a motion to dismiss for lack of subject matter jurisdiction based 'on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *McDougall v. Saudi Arabian Oil Co.*, No. 25-10619, 2026 WL 907776, at *2 (5th Cir. Apr. 2, 2026) (quoting *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019)).

This Court must decide the AEFE's motion prior to ruling on any other matters in this case. *See, e.g.*, *Zirus v. Zuiker*, No. 25-50094, 2025 WL 3688711, at *1 (5th Cir. Dec. 19, 2025) ("This court has held that a district court has a nondiscretionary duty to consider challenges to its subject matter jurisdiction . . . at the earliest possible stage of the litigation."); *Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022) ("Where sovereign immunity applies, it applies totally. Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery.").

### B. Subject matter jurisdiction is governed by the FSIA.

The FSIA "provides 'the sole basis for obtaining jurisdiction over a foreign state in [federal and state] courts.'" *McDougall*, 2026 WL 907776, at *2 (quoting *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 257 (5th Cir. 2016)). Under the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States exception as provided in sections 1605 and 1607 of this chapter." 28 U.S.C. § 1604. "If no exception applies, there is no other basis for personal or subject matter jurisdiction over a foreign state." *Janvey*, 840 F.3d at 257 (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983)).

Subject matter jurisdiction under the FSIA is determined using a burden-shifting framework. *McDougall*, 2026 WL 907776, at *2. First, the defendant "need only present a *prima facie* case that it is a foreign state." *Frank v. Commonwealth of Antigua & Barbuda*, 842

F.3d 362, 367 (5th Cir. 2016). If the defendant presents such a case, it is "entitled to a presumption of immunity." *Janvey*, 840 F.3d at 257. The burden then shifts to the plaintiff to present evidence that one of the exceptions to immunity applies. *Frank*, 842 F.3d at 367. If the plaintiff bears its burden, then the defendant has the burden of proving that an exception to immunity does not apply. *Janvey*, 840 F.3d at 257-58.

### C.  The AEFE is immune under the FSIA.

#### 1.  *The AEFE is a foreign state entitled to immunity.*

The FSIA defines "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a).  An "agency or instrumentality of a foreign state" means any entity that "(1) is a separate legal person, corporate or otherwise; (2) which is an organ of a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States nor created under the laws of any third country."  28 U.S.C. § 1603(b).  Although there is no "clear test" for determining whether an entity is an "organ of a foreign state," the Fifth Circuit has adopted five-factor framework for courts to consider:

> (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law.

*Bd. of Regents of Univ. of Texas Sys. v. Nippon Tel. & Tel. Corp.*, 478 F.3d 274, 279 (5th Cir. 2007) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846-847 (5th Cir. 2000)).

Lycée Français alleges that "the AEFE is a French public establishment under the supervision of the French Ministry for Europe and Foreign Affairs."  Petition (R. Doc. 1-1) at ¶

2. Lycée Français' Petition concerns the French Government's accreditation of the school, which is governed by the French Education Code. *Id*. at ¶¶ 2, 11.

Furthermore, as detailed in the Declaration of Claudia Scherer-Effosse, attached hereto as Exhibit B, the AEFE is a public agency created by the French Government and placed under the supervision of the French Ministry for Europe and Foreign Affairs and the French Ministry of National Education, departments within the Executive Branch of the French Government. The AEFE serves the national purposes of promoting access to French education for French children residing abroad and acting as a diplomatic tool for France by promoting French language, culture, and values abroad. *Id*. The AEFE's operations are governed by the French Education Code. *Id*. The AEFE is funded by the French Government. *Id.* The AEFE employs approximately 5,000 civil servants. Therefore, the AEFE is a foreign state.

### 2. *None of the foreign sovereign immunity exceptions apply.*

Lycée Français' Petition does not identify any immunity exception, and none applies. For example, the commercial exception (28 U.S.C. § 1605(a)(2)) does not apply because "[t]he granting of accreditation to a private school by a foreign government is by its very nature a sovereign function, incapable of being performed by a private individual [and] ... the welfare and education of its citizenry is ... an area where sovereign activity is typically asserted"). *City School of Detroit v. Government of France*, 1990 U.S. Dist. LEXIS 19577, at *9-*10 (E.D. Mich. 1990) (finding that French Government was immune from suit for school accreditation decision). Because Lycée Français cannot carry its burden of establishing an exception to immunity, the Court must find that the AEFE is immune from suit under the FSIA.

11

**II.**    **Motion to Dismiss for *Forum Non Conveniens* and International Comity Abstention**

Even if the AEFE was not immune from suit under the FSIA (which it is), the Court should dismiss this case because Lycée Français has litigated – and continues to ligate – the claims presented in this lawsuit in the courts of France, which is the forum best suited to decide the school's claims under French law.

### A. *Forum Non Conveniens*

"In rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 722 (1996). There is a two-part test to determine whether a case should be dismissed on grounds of *forum non conveniens*. First, "the court must determine whether there exists an alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, n. 22 (1981). "An alternative forum is considered available if the entire case and all parties can come within its jurisdiction." *Vasquez v. Bridgestone/Firestone, Inc*., 325 F.3d 665, 671 (5th Cir. 2003). Second, the court must determine whether "the balance of relevant private and public interest factors favor dismissal" to allow the case to be litigated in the alternative forum. *Id.* (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221-22 (5th Cir. 2000)).

### B. International Comity Abstention Doctrine

International comity is "the extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation." *Hilton v. Guyot*, 159 U.S. 113, 163 (1895). Abstention based on international comity may be invoked "when there is litigation pending in a foreign forum or, even absent such litigation, when allowing a case to proceed in the United States would intrude on the interests of a foreign government." *Perforaciones Exploracion Y*

12

*Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 F. App'x 675, 681 (5th Cir. 2009) (citing *Ungaro–Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004)); *see also Anderson Tully Lumber Co. v. Int'l Forest Prods., S.r.L*, 306 F. App'x 858, 861 (5th Cir. 2009) (affirming dismissal of suit on the basis of *forum non conveniens* and international comity where related litigation was ongoing in Italy); *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240 (2d Cir. 1999) (dismissing case based on international comity due to concurrent bankruptcy proceedings in Brazil); *Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1523 (11th Cir. 1994) (denying preliminary injunction and staying case to defer to concurrent German proceedings).

When determining whether to abstain, the Court should consider "whether an adequate forum exists in the objecting nation and whether the defendant sought to be sued in the United States forum is subject to or has consented to the assertion of jurisdiction against it in the foreign forum." *Zybertech Constr. Software Servs. Ltd v. Shenner*, No. 23-01738, 2024 WL 4051759, at *1 (N.D. Tex. Sept. 4, 2024) (citing *Jota v. Texaco, Inc.*, 157 F.3d 153, 160 (2d Cir. 1998)). An additional consideration is "whether the central issue in dispute is a matter of foreign law and whether there is a prospect of conflicting judgments." *Zybertech*, 2024 WL 4051759, at *1 (citing *Turner*, 25 F.3d at 1521).

**C. The Court should dismiss this case on *forum non conveniens* and abstention grounds.**

Prior to filing this lawsuit, Lycée Français initiated litigation against the AEFE in France on the same issues raised in this case. *See* Exhibits C - E. Only when the French courts denied the preliminary relief sought by Lycée Français did the school file this case in the United States (even though its two cases for permanent injunctive relief remain ongoing in France).

Lycée Français is not required to be accredited by the French Government to operate, and there is no right under state or federal law for Lycée Français to be accredited by the French Government.  To the contrary, Lycée Français voluntarily sought to be accredited by the French Government and agreed to be bound by the French Education Code.  In doing so, Lycée Français knowingly consented to being subject to the laws of France insofar as the accreditation is concerned.

In first choosing to initiate litigation in France, Lycée Français "consented to the assertion of jurisdiction against it in the foreign forum."  *Zybertech*, 2024 WL 4051759, at *1; *see also Vasquez*, 325 F.3d at 671 (an alternative forum exists for purposes of *forum non conveniens* where the parties "can come within its jurisdiction").  Furthermore, the decision of whether to accredit foreign schools and ultimately award a French Baccalauréat undisputedly is an issue determined by French law and, therefore, is a matter for France – not the United States – to decide.  *Zybertech*, 2024 WL 4051759, at *1.  Relatedly, it is axiomatic that the French Government has a considerably stronger interest in its own accreditation of schools than does the United States.  *Vasquez*, 325 F.3d at 671 (courts must weigh "the relevant private and public interest factors" in determining whether to dismiss a case on *forum non conveniens* grounds).  On the other hand, having a U.S. court tell the French Government how to accredit schools unnecessarily "would intrude on the interests of a foreign government."  *Perforaciones*, 356 F. App'x at 681.  The case should be dismissed based on *forum non conveniens* and the international comity abstention doctrine.

14

**D. French courts already denied the preliminary injunctive relief sought by Lycée Français, and there is ongoing litigation in France regarding the permanent injunctive relief.**

There also is a significant risk of inconsistent rulings, another factor this Court must consider. *Zybertech*, 2024 WL 4051759, at *1 (in deciding whether to dismiss a case based on international comity, the court must note "whether there is a prospect of conflicting judgments"). Lycée Français already went to court in an attempt to stay or extend the deadline on which they had to submit compliance documents to the French Government. On April 9, 2026, the Tribunal Administratif de Paris denied the relief, finding no basis to stay or extend the (already-twice-extended) deadline. *See* Exhibit E. Decisions of the Tribunal Administratif de Paris are not reviewable or appealable to Civil District Court or the Eastern District. This Court should decline jurisdiction to reconsider orders of French courts interpreting French law on an issue of French sovereignty.

Furthermore, Lycée Français is continuing to litigate two cases (Case No. 2600096 and Case No. 2609960) in France regarding the same request for permanent injunctive relief asserted in this lawsuit. This Court should let the litigation proceed in France, where Lycée Français first filed suit. To do otherwise risks inconsistent rulings.

### CONCLUSION

Lycée Français cannot bear its burden of establishing subject matter jurisdiction because the AEFE, a foreign state, is statutorily immune from suit in the United States. This Court should grant the AEFE's motion and dismiss this suit pursuant to Rule 12(a)(1).

Even if the Court could exercise jurisdiction under the FSIA, this matter should be litigated in France, where Lycée Français first initiated litigation. Indeed, French courts already denied the preliminary relief sought by Lycée Français in this case, and there is active, ongoing

litigation regarding the permanent relief sought by the school. Because the interests of France are considerably stronger than those of the United States, and the accreditation of foreign schools by the French Government is determined under French law, the Court should dismiss this case based on *forum non conveniens* and the international comity abstention doctrine.

Respectfully submitted,

*/s/ Patrick J. Lorio*
H. Minor Pipes, III, 24603
Jeffrey Clayman, 30442
Patrick J. Lorio, 38328
PIPES | MILES | BECKMAN, LLC
1100 Poydras Street, Suite 3300
New Orleans, Louisiana 70163
Telephone: (504) 322-7070
Fax: (504) 322-7520
mpipes@pipesmiles.com
jclayman@pipesmiles.com
plorio@pipesmiles.com

*Counsel for Agence Pour L'enseignement Français à L'étranger, a/k/a Agency for French Education Abroad*