UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LYCÉE FRANÇAIS INTERNATIONAL DE LA LOUISIANE | * * * | CIVIL ACTION NO. 26-00946 |
| VERSUS | * * | |
| AGENCE POUR L'ENSEIGNEMENT FRANÇAIS A L'ETRANGER, A/K/A AGENCY FOR FRENCH EDUCATION ABROAD | * * * * * | JUDGE: JANE TRICHE MILAZZO MAG. JUDGE: JANIS VAN MEERVELD |

**AGENCE POUR L'ENSEIGNEMENT FRANÇAIS À L'ÉTRANGER'S OPPOSITION TO PLAINTIFF'S MOTION FOR LIMITED JURISDICTIONAL DISCOVERY AND CONTINUANCE OF SUBMISSION DATE**

Defendant, Agence Pour L'enseignement Français à L'étranger, a/k/a Agency for French Education Abroad ("AEFE"), respectfully submits this opposition to the Motion for Limited Jurisdictional Discovery and Continuance of Submission Date (R. Doc. 9) filed by Plaintiff, Lycée Français International de la Louisiane ("Lycée Français"). As an initial matter, AEFE has moved to dismiss this case on *forum non conveniens* and abstention grounds, and the Court should rule on these issues, which do not require discovery, before considering the request for jurisdictional discovery on the immunity issue.

Even if the Court considers jurisdictional discovery on the immunity issue, Lycée Français seeks completely unnecessary, overbroad, and expensive discovery in an effort to delay the Court's consideration of AEFE's Motion to Dismiss (R. Doc. 6). This should not be permitted. First, the Foreign Sovereign Immunities Act ("FSIA") provides AEFE immunity from discovery. Second, on the current record, it is clear that the commercial activities exception to FSIA has no application here. Finally, Lycée Français's proposed discovery is completely untethered to the FSIA immunity issue, which as a matter of law, is confined to the claims asserted by Lycée Français in its petition.

1. **The Court should rule on AEFE's Motion to Dismiss based on *forum non conveniens* and international comity abstention before entertaining Lycée Français's request for jurisdictional discovery.**

AEFE raises two bases for dismissal in its Motion to Dismiss: (i) FSIA immunity and (ii) *forum non conveniens* and international comity abstention.[1] Lycée Français seeks discovery only on FSIA immunity. The Court should consider and rule on the Motion to Dismiss as it pertains to *forum non conveniens* and international comity abstention before considering the Motion for Jurisdictional Discovery because the ruling should moot the discovery issue. *See, e.g.*, *Gordon v. Entergy New Orleans, Inc.*, No. CIV.A. 06-846, 2008 WL 417755, at *3 (E.D. La. Feb. 13, 2008) ("Supreme Court precedents establish that federal courts have leeway to choose among threshold grounds for denying audience to a case on the merits.") (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 432 (2007) (internal quotations omitted)). However, even if the Court denies the Motion to Dismiss on *forum non conveniens* and abstention grounds, jurisdictional discovery, especially to the extent requested by Lycée Français should be denied on the FSIA immunity issue for the reasons detailed below.

2. **FSIA immunity protects AEFE from jurisdictional discovery, especially where the discovery sought has no relation to the claims asserted by Lycée Français.**

"FSIA is immunity from suit, not just from liability[.]" *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994); *see also Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 847 (5th Cir. 2000) (citing *United States v. Moats*, 961 F.2d 1198 (5th Cir. 1992)) ("FSIA immunity … is immunity not only from liability, but from the burdens of litigation as well."). Thus, "sovereign immunity [under FSIA] is an immunity from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself." *Moats*, 961 F.2d at

---

[1] Prior to filing this lawsuit, Lycée Français initiated litigation against AEFE in France on the same issues raised in this case. Attached hereto as Exhibits A – C are Certified Copies of the decisions from the French courts to date on the issues raised in Lycée Français's Petition. (Noncertified copies were attached to AEFE's Motion to Dismiss.)

1203. "Regardless of what the plaintiff seeks from the foreign defendant, the risk of harm from having to defend the lawsuit remains constant and is an irreparable loss[.]" *Id.*

Like Lycée Français, the plaintiff in *Arriba Limited v. Petroleos Mexicanos* argued that "having alleged jurisdiction under the commercial activity exception, it [was] entitled to pursue discovery to support its allegations." 962 F.2d 528, 534 (5th Cir. 1992). Though the district court agreed with the plaintiff, "drawing an analogy to the usual procedure for resolving contested jurisdictional issues," the Fifth Circuit found that the "[district] court was enticed into its discovery order prematurely[.]" *Id.*

As the Fifth Circuit noted, "[s]everal courts have observed the tension between permitting discovery to substantiate exceptions to statutory foreign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Id.* Thus, it held that "[a] necessary prerequisite to an order for limited discovery is a district court's clear understanding of the plaintiff's claims against a sovereign entity." *Id.* The fact that the defendant in that case had some commercial operations in or affecting the United States was inadequate to support the district court's ruling—rather, "[t]he only relevant acts for purposes of jurisdiction under the FSIA are those acts that form the basis of the plaintiff's complaint." *Id.* (citing *Stena Rederi AB v. Comision de Contratos*, 923 F.2d 380, 387-88 (5th Cir. 1991)).

Returning to the allegations of the plaintiff's complaint, the Fifth Circuit concluded that "permitting discovery will not cure the FSIA jurisdictional deficiency." *Id.* at 537; *see also Kelly*, *supra* (applying *Arriba* and affirming the district court's denial of jurisdictional discovery before ruling upon a defendant's motion to dismiss based on FSIA immunity); *Evans v. Pemex*, 390 F. Supp. 2d 587, 590–91 (S.D. Tex. 2005), *aff'd sub nom.*, *Evans v. Petroleos Mexicanos (PEMEX)*, No. 05-20434, 2006 WL 952265 (5th Cir. Apr. 13, 2006) ("The Court finds this factual allegation

3

inadequate to support an exception under § 1605(a)(2). In the same vein, the Court finds that Plaintiff is not entitled to burden a foreign sovereign with discovery requests unless he can at least first allege an adequate basis for an applicable exception under the FSIA.") (citing *Arriba*, *supra* & *Kelly*, *supra*).

Here, as in *Arriba*, discovery will not cure the jurisdictional deficiency of Lycée Français's petition. Focusing on "those acts that form the basis of the plaintiff's complaint," there is no justification for imposing the heavy burden of discovery on AEFE. Plaintiff's petition is based entirely upon AEFE's role in the accreditation of Lycée Français and not on any alleged commercial activity by AEFE in the United States as a whole or elsewhere.[2] To be sure, the relief sought by Lycée Français is a temporary injunction (i) stopping AEFE from taking action adverse to its "accreditation status" during litigation, (ii) preventing AEFE from conducting an inspection during LEAP testing (a claim which is now moot), and (iii) extending the deadline for Lycée Français to submit documents in connection with its accreditation by AEFE for at least 90 days.[3] Lycée Français further seeks a permanent injunction which (i) sets aside its probation status, (ii) requires AEFE to perform a new inspection for accreditation purposes, (iii) requires AEFE to give full and fair consideration to its right of reply and corrective evidence before rendering any accreditation determination; and (iv) precludes AEFE from relying on certain criteria as the basis of any adverse accreditation action.[4]

As discussed in more detail below, allegations concerning foreign funding and accreditation of schools in the United States are distinctly sovereign activities (not commercial),

---

[2] *See* Pl.'s Pet. (R. Doc. 1-1).

[3] *Id*. at p. 18 of 49.

[4] *Id*.

and the "commercial activities" Lycée Français seeks discovery upon in its motion, *e.g.*, "how AEFE charges for, invoices, accounts for, and deploys [] services in the United States and the broader AEFE network," are neither based on Lycée Français's claims against AEFE nor do they have a "jurisdictional nexus" to its claims against AEFE. *See Stena*, 923 F.2d at 386 ("A foreign sovereign, however, does not abrogate its sovereign immunity simply because it conducts commercial operations that have a connection with the United States. Not only must there be a jurisdictional nexus between the United States and the commercial acts of the foreign sovereign, there must be a connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign."); *O'Bryan v. Holy See*, 556 F.3d 361, 380 (6th Cir. 2009) ("Here, plaintiff's complaint does not allege property damage, breach of contract for goods or services, product liability, copyright infringement, an indebtedness yet unpaid on a loan or other transaction, or any other theory whose true essence is commercial.") (quoting *Doe v. Holy See*, 434 F.Supp.2d 925, 942 (D. Or. 2006)).

For these reasons, there is simply no basis for Lycée Français to conduct jurisdictional discovery against AEFE.

3. **Jurisdictional discovery is not warranted because, on the record before the Court, the "commercial activity" exception clearly does not apply.**

The Court should not open the door to burdensome jurisdictional discovery against a foreign sovereign because the record before the Court clearly demonstrates that (a) AEFE is a foreign state and (b) the "commercial activity" exception to FSIA does not apply. Jurisdictional discovery will not change this.

"The FSIA is the exclusive means by which a foreign state, as that term is defined in the Act, may be sued in a United States federal court." *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 288 (5th Cir. 1989). "Under the FSIA, a foreign state is immune from suit—and the

5

district court lacks jurisdiction—unless one of the specific exceptions contained in sections 1605–1607 is found to apply. 28 U.S.C. § 1604." *Id*. "[A]lthough a party claiming FSIA immunity retains the ultimate burden of persuasion on immunity, it need only present a prima facie case that it is a foreign state; and, if it does, the burden shifts to the party opposing immunity to present evidence that one of the exceptions to immunity applies." *Kelly*, 213 F.3d at 847.

### a. AEFE is a foreign state immune from suit under FSIA.

AEFE has made a prima facie showing that is a foreign state immune from suit under FSIA. Beyond Lycée Français's own allegations that AEFE is part of the French Government,[5] AEFE has shown:

- It is a national public administrative establishment in France. It is placed under the supervision of the Ministry for Europe and Foreign Affairs, a ministry within the executive branch of the French Government.[6]

- It was created by law on July 6, 1990 for the dual national purpose of (i) ensuring the continuity of France's public education for French children living outside of France and (ii) acting as a diplomatic tool for France by promoting French language, culture, and values abroad.[7]

- It is closely supervised by the French Government, both by the Ministry of Europe and Foreign Affairs as well as the Ministry of Education.[8]

- Its Board of Governors include, among others, French ministries representatives, members of parliament, and French civil servants.[9]

- Its operations are governed by the French Education Code.[10]

- It is a not-for-profit body.[11]

---

[5] *See* R. Doc. 1-1, at ¶¶ 2, 11.

[6] *See* Scherer-Eeffosse Decl. (R. Doc. 6-3), at ¶ 4.

[7] *Id*. at ¶ 5.

[8] *Id*. at ¶ 6.

[9] *Id*. at ¶ 7.

[10] *Id*. at ¶ 8.

[11] *Id*. at ¶ 9.

- It receives French public funds to implement its operations.[12]

Having established itself as a foreign state (a fact undisputed by Lycée Français), Lycée Français

bears the burden of presenting evidence that one of the exceptions to FSIA immunity applies.

**b. The "commercial activity" exception does not relate to the claims asserted by Lycée Français.**

The exception invoked by Lycée Français is the "commercial activity" exception based on

28 U.S.C. 1605(a)(2):

> **(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> **(2)** in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

"An activity is considered 'commercial' if it is the type a private person normally would engage

in for profit." *Moats*, 961 F.2d at 1205 (quoting *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1108

n. 6 (5th Cir. 1985)). "Put differently, a foreign state engages in commercial activity … only where

it acts 'in the manner of a private player within' the market." *Saudi Arabia v. Nelson*, 507 U.S.

349, 360 (1993).

"[I]f the activities in question are not private, but sovereign in nature, then the commercial

activities exception will not apply." *O'Bryan*, 556 F.3d at 379 (6th Cir. 2009). Supreme Court cases

"instruct courts to avoid the artful pleadings of plaintiffs and look to the core of the activities

alleged to be commercial in nature." *Id.* at 380. Thus, courts are first "to ascertain the claim's

---

[12] *Id*. at ¶ 10.

gravamen to determine whether the FSIA plaintiff is simply using creative nomenclature as a semantic ploy to shroud the true essence of its theory and obtain jurisdiction over a claim that Congress did not intend to be brought against a foreign sovereign." *Id*. (quoting *Leutwyler v. Officer of Her Majesty Queen Rania Al Abdullah,* 184 F.Supp.2d 277, 299 (S.D.N.Y. 2001)).

### i. Providing support to foreign schools that facilitate French education is not the type of activity performed by a private person in the marketplace.

Even with jurisdictional discovery, Lycée Français could never clear the initial hurdle of showing that AEFE's role in the accreditation of foreign schools is the type of activity a private person normally would engage in in the marketplace. Indeed, the claim that accreditation and funding of a French school by the French Government fell within the commercial activities exception to FSIA was roundly rejected by the court in *City School of Detroit v. Government of France*, 1990 U.S. Dist. LEXIS 19577 (E.D. Mich. 1990).

In that case, the French Government "pledge[d] its financial support to plaintiff, the City School of Detroit, if plaintiff would in turn provide a French educational program meeting French accreditation standards." *Id*. at *3-*4. When the French Government did not issue a grant for the upcoming school year, the school sued. *Id*. at *4. The French Government responded with a motion to dismiss based on sovereign immunity under the FSIA; the City School of Detroit argued that the commercial activities exception applied. In rejecting the City School of Detroit's argument, the court found:

> In the present matter it is not disputed that the operation of a private school for the education of children such as the City School of Detroit may properly be considered commercial activity not limited only to a sovereign. However, **it is equally undisputed that the accreditation of a private school by a foreign government is a sovereign activity or prerogative—an activity by its very nature cannot be performed by a private individual.** Here, although the granting of the [funding] by the Government of France retains an indicia of commercial activity since money was to exchange hands, the Court must find that **such activity was immune from**

8

> **suit since it was directly tied to a sovereign function rather than any commercial function**.
>
> …
>
> **The essential nature of the Government of France's activity in this arrangement was merely to provide accreditation to the City School** and further to provide aid to the School through the form of the [funding] and a French national teacher, **the ultimate purpose of which was to benefit the French schoolchildren by helping the School meet French accreditation standards**.
>
> …
>
> [T]he essence of the relationship between the Government of France and the City School involved a wholly sovereign prerogative. The sole nature and purpose of the subvention was to aid the City School in obtaining French accreditation. **The granting of accreditation to a private school by a foreign government is by its very nature a sovereign function, incapable of being performed by a private individual.**

*Id*. at *8-*10 (emphasis added).

The record before the Court compels the same result here, without the need for jurisdictional discovery. AEFE's ten-part national purpose, defined by Article L452-2 of the French Education Code, confirms that its activities are likewise a sovereign function (*e.g.*, "To ensure for the benefit of French children residing outside France, the public service missions relating to education. … To contribute, in particular through the enrolment of foreign pupils, to the influence of the French language and culture.").[13] Moreover, like the Government of France in *City School of Detroit*, AEFE does not "directly manage the School, purchase good or supplies of the School, lease property for the School or engage in a contract with the School to pay the tuition of the French schoolchildren[.]" 1990 U.S. Dist. LEXIS 19577, at *8-*9.

Lycée Français's attempt to recharacterize AEFE's activities as a commercial service provider likewise falls flat. Even if AEFE engages in some activities that are vaguely commercial,

---

[13] For the full statement of AEFE's purpose see AEFE's Memorandum in Support of Motion to Dismiss (R. Doc. 6-1), at p. 2.

such as collecting a nominal fee for its services or being a party to a contract, this does not convert its sovereign activities to commercial activities under the FSIA. For example, in *UNC Lear Services, Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210 (5th Cir. 2009), Lear sued the Kingdom for breaching two contracts. One of the contracts was a service contract under which Lear sent hundreds of personnel to Saudi Arabia to provide training and support services to the Royal Saudi Air Force and required Lear to put up a multi-million-dollar performance bond to guarantee the contract. *Id*. at 213.

Lear invoked the commercial activities exception to the FSIA in response to the Kingdom's motion to dismiss. *Id*. at 214. In holding that that service contract does not fall within the commercial activity exception and finding that both the purpose and nature of the contract was sovereign, the Fifth Circuit looked to the legislative history of the FSIA which "instructs 'the employment of diplomatic, civil service, or military personnel' is not commercial in nature." *Id*. at 216 (citing H.R.Rep. No. 94–1487, at 16 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6614). The court also cited *Kato v. Ishihara,* 360 F.3d 106, 111 (2nd Cir. 2004) for the proposition that the employment of a public servant in the promotion of commerce was not in itself a commercial activity, as well as *Holden v. Canadian Consulate,* 92 F.3d 918, 921 (9th Cir. 1996), which found that "[b]ecause private parties cannot hire diplomatic, civil service or military personnel, such hiring is necessarily governmental."

Similarly, in *Anglo-Iberia Underwriting Management v. P.T. Jamsostek*, 600 F.3d 171 (2d Cir. 2010), the court considered whether the commercial activities exception to the FSIA applied to Indonesia's state-owned social security insurer and the Republic of Indonesia. The plaintiff argued that foreign agency's activities were "akin to a private insurer in its hiring, training, employment, and supervision of employees to perform non-discretionary duties such as locating

10

health care providers, processing and verifying health insurance claims, collecting health insurance premiums, and preparing reports." *Id*. at 177. The court rejected the plaintiff's argument that the agency "behaves like a private insurer" and found that the plaintiff mischaracterized the nature of the acts the agency performs because, among other things, "it does not compete in the marketplace like a private insurer." *Id*. As such, the court held that defendants' activities were sovereign in nature such that the commercial activities exception did not apply. *Id*. at 178.

Here, both the nature and the purpose of AEFE's activities in the United States (and elsewhere), specifically any performed pursuant to the Collaboration Agreement,[14] are non-commercial under the FSIA. Certainly, French civil servants providing support to French schools and promoting French education are less commercial than a service contract secured by a bond to train and support foreign military on the use of fighter jets or providing health insurance to foreign nationals abroad. Lycée Français's proposed fishing expedition will not change that fact and, as such, its motion for jurisdictional discovery should be denied.

>       ii.     **Lycée Français's claims against AEFE have no connection to the alleged commercial activity nor a jurisdictional nexus.**

The commercial activities exception additionally requires there to be a connection between the alleged commercial activity and the cause of action asserted by the plaintiff. *Moats*, 961 F.2d at 1202. That is, "merely showing that a foreign state or its instrumentality has engaged in 'commercial activities' within the meaning of the Act is not sufficient: only those commercial

---

[14] *See* Annex 1 to the Collaboration Agreement (R. Doc. 6-2), at pp. 8-9 of 13. Lycée Français misrepresents the terms of the Collaboration Agreement when it asserts that "the agreement is governed by the local law of the place where the school is located." *See* Supp. Mem. (R. Doc. 9-1), at p. 2. Rather, the Collaboration Agreement states, "The present agreement is **subject to local law** enforced in the state where the signatory school is located." R. Doc. 6-2, p. 1 of 13 (emphasis added). This distinction matters: "subject to" implies a conformity with local law, not a choice of law. *See, e.g.*, *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 549 (W.D. Tex. 2020) ("[T]this language ensures that the agreement conforms with the laws of the insured's state, thereby negating any need for Defendant to customize its contracts for 50 different sets of insureds."); *Wilmington Tr., N.A. v. Lincoln Benefit Life Co.*, No. 17-23669-CIV, 2018 WL 6308687, at *3 (S.D. Fla. Sept. 20, 2018) (collecting cases).

activities with a sufficient 'jurisdictional nexus' to the United States fall within the exception." *Arriba*, 962 F.2d at 533. "Thus, '[i]n order to satisfy the commercial activities exception to sovereign immunity, the commercial activity that provides the jurisdictional nexus with the United States must also be the activity on which the lawsuit is based.'" *Id*. (quoting *Stena*, 923 F.2d at 387). "Isolated or unrelated commercial actions by a foreign sovereign in the United States do not authorize the exception." *Id.* As noted above, in making this determination, courts must "avoid the artful pleading of plaintiffs and look to the core of the activities alleged to be commercial in nature." *O'Bryan*, 556 F.3d 361, 380 (6th Cir. 2009) (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992); *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993)).

Again, Lycée Français's claims against AEFE are unrelated to any commercial activity by AEFE nor is there a jurisdictional nexus between any alleged commercial activities and the United States. Lycée Français's petition seeks injunctive relief in relation to its accreditation status by the French Government.[15] Unlike those cases in which courts have found the commercial activities exception to apply, Lycée Français's petition does not allege anything even approximating "property damage, breach of contract for goods or services, product liability, copyright infringement, an indebtedness yet unpaid on a loan or other transaction, or any other theory whose true essence is commercial." *O'Bryan*, 556 F.3d at 380. Nor do the allegations approach commercial activities in the United States such as "a contract to purchase military supplies, the … issuance of bonds in order to refinance government debt, [or] the act of hiring a domestic servant." *EduMoz, LLC v. Republic of Mozambique*, 968 F.Supp.2d 1041, 1062 (C.D. Cal. 2013).

Thus, even if Lycée Français could prove that AEFE's activities are the type of activity a private person normally would engage in in the marketplace (which it cannot), its claims fail the

---

[15] *See* Pl.'s Pet. (R. Doc. 1-1).

second part of commercial activities exception test. *E.g.*, *O'Bryan*, 556 F.3d at 380 ("Both limiting principles apply to plaintiffs' attempt to invoke the commercial acidity exception[.]"). For this additional reason, the Court should not advance Lycée Français's attempt to conduct jurisdictional discovery and delay consideration of AEFE's Motion to Dismiss.

### iii. The exception does not apply if the foreign state's activities are both commercial and sovereign.

Critically, as the court observed in *City School of Detroit* "even if the lawsuit is based upon the commercial activity of a sovereign, jurisdiction will not obtain if that activity is also sovereign in nature, i.e. activity which could only be undertaken by a sovereign and not by a private individual." (citing *Millen Industries, Inc. v. Coordination Council for North American Affairs*, 855 F.2d 879, 884-85 (D.C. Cir. 1988); *Rush-Presbyterian-St. Luke's Medical Center v. The Hellenic Republic*, 877 F.2d 574, 578 (7th Cir. 1989)). In *Rush-Presbyterian*, the Seventh Circuit observed that "certain contracts, although generally of a type in which a private person could enter, are by their nature governmental, since only a sovereign entity deals in the particular kind of goods or services." 877 F.2d at 578. One of the examples the court gave was an employment contract between private persons and "a foreign state and its civil servants, diplomats or military personnel." *Id*. at 579. Such contracts are not "commercial" transactions, since the employment of such personnel is intimately connected with the foreign state's formulation and execution of government policy." *Id*.

While Lycée Français attempts to characterize the Collaboration Agreement as a commercial contract, the fact that the services provided thereunder are performed by French government officials and civil servants, and the purpose of the agreement is to advance French

13

national interests and policy, establish that AEFE's activities are indisputably sovereign.[16] Yet again, no amount of jurisdictional discovery will alter these plain facts.

### 4. Lycée Français's proposed discovery is unrelated to the claims it has asserted.

The self-described "focused" jurisdictional discovery Lycée Français proposes is anything but focused—it is a fishing expedition with the purpose of delaying consideration of AEFE's Motion to Dismiss.  Lycée Français proposes two to three months of discovery where it will seek:

- "AEFE's financial statements, audited accounts, budgets, revenue reports, and documents sufficient to show payments, subsidies, invoices, contributions, and school-paid expenses received from or associated with schools in the United States, North America, and the broader AEFE network."

- "[D]ocuments identifying AEFE's contracts, agreements, partnership arrangements, invoices, and payment terms with schools in the United States and other countries," as well as "documents concerning AEFE's April 2026 document demands and planned on-site inspection of Lycée."

- "[T]he deposition of Claudia Scherer-Effosse," the Director of AEFE.

- The corporate deposition of AEFE "concerning its contracts in the United States, including inspections, visits, training, communications, data requests, financial reporting, seminars, recruitment support, examination support, and other services provided to schools in the United States."

R. Doc. 9-1, at pp. 3-4. In other words, Lycée Français wants discovery covering the entirety of AEFE's operations across the globe.

Ordinarily, a court could limit the scope of requested discovery, but not here where the scope is so broad, the jurisdictional nexus so plainly lacking, and the sovereign immunity issue so clear. Discovery will not change the well-established facts entitling AEFE to immunity because Lycée Français's proposed discovery is not directed to the claims in its petition concerning AEFE's alleged commercial activities and the jurisdictional nexus of those specific activities to the United

---

[16] *See* Scherer-Eeffosse Decl. (R. Doc. 6-3) & Collaboration Agreement (R. Doc. 6-2).

States (although there are none). *Stena*, 923 F.2d at 387–88 ("The only relevant acts for purposes of jurisdiction under the FSIA are those acts that form the basis of the plaintiff's complaint.").

Specifically, Lycée Français seeks injunctive relief concerning accreditation status, AEFE's inspection of the school, Lycée Français's deadline to submit documents to AEFE,  and AEFE's consideration of certain evidence and criteria before rendering any accreditation determination.[17] Discovery regarding AEFE's activities as a whole, including extensive discovery concerning its finances, or with any school other than Lycée Français have no bearing on AEFE's claim of immunity in this case. The cases cited above make clear that the commercial activities exception turns on the specific transaction at issue. Thus, the Court should deny Lycée Français's request for jurisdictional discovery.

**CONCLUSION**

For the foregoing reasons, Lycée Français's Motion for Limited Jurisdictional Discovery and Continuance of Submission Date (R. Doc. 9) should be denied.

Respectfully submitted,

*/s/  Jeffrey A. Clayman*
H. Minor Pipes, III, 24603
Jeffrey Clayman, 30442
Patrick J. Lorio, 38328
PIPES | MILES | BECKMAN, LLC
1100 Poydras Street, Suite 3300
New Orleans, Louisiana 70163
Telephone: (504) 322-7070
Fax: (504) 322-7520
mpipes@pipesmiles.com
jclayman@pipesmiles.com
plorio@pipesmiles.com

*Counsel for Agence Pour L'enseignement Français à L'étranger, a/k/a Agency for French Education Abroad*

---

[17] *Id.*

15